UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CREDIT SUISSE, a Swiss bank, | ) | |
| | ) | Case No. CV 08-139-S-EJL-CWD |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JEAN-PIERRE BOESPFLUG, an | ) | |
| individual; ALFREDO MIGUEL AFIF, an | ) | |
| individual, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **REPORT**

### **I.**
### **Background**

This matter arises out of Plaintiff Credit Suisse's efforts to collect a $250,000,000 debt

owed by Tamarack Resort LLC.  Credit Suisse claims that Tamarack Resort LLC defaulted

under the terms of its security agreement and mortgage.  Thereafter, Credit Suisse filed a

complaint in Idaho state district court seeking foreclosure on the mortgages securing the loan, for

the appointment of a receiver, and for injunctive relief.  In conjunction with the loan documents,

and as a condition of the loan, Defendants Jean-Pierre Boespflug and Alfredo Miguel Afif

("Boespflug" and "Miguel," or "Defendants") signed a personal guaranty.  In this action, Credit

Suisse claims that Boespflug and Miguel have breached the terms of the guaranty agreement, and seeks damages for the alleged breaches.

Defendants have filed two motions to dismiss.  (Docket Nos. 15, 22.)  The first motion to dismiss is premised on the argument that diversity jurisdiction is not properly asserted, while the second motion seeks dismissal on the grounds that Credit Suisse may not pursue collection upon the guaranty while also maintaining a foreclosure action.  For the reasons that follow, the Court recommends that both of Defendants' motions be denied.

## II.
## Facts

### A.    The Loan Agreements

For the purposes of this opinion, the pertinent facts are set forth in Credit Suisse's Complaint (Docket No. 1) and the Affidavit of Angstman (Docket No. 23).[1]  Tamarack Resort LLC (referred to by Credit Suisse as "Borrower") obtained a loan in May 2006 from Credit Suisse to finance the development and construction of Tamarack Resort, an upscale four season resort located in Valley County and Adams County outside of Donnelly, Idaho.  The loan is secured by the real property comprising the resort, as well as by personal property and fixtures located within the resort property.  The loan documents consist of a Security Agreement executed by Tamarack Resort LLC, Credit Suisse Securities (USA) LLC, Credit Suisse Cayman Islands Branch, and SG Americas Securities, LLC; a Mortgage executed by Tamarack Resort LLC and Credit Suisse, Cayman Islands Branch; a Mortgage executed by subsidiary entities of Tamarack Resort LLC and Credit Suisse, Cayman Islands Branch; a Subsidiary Guaranty

---

[1]  Defendants filed their two motions under Fed. R. Civ. P. 12(b) prior to filing a responsive pleading.

REPORT AND RECOMMENDATION - 2

executed by those same entities; and a Personal Guaranty executed by Boespflug and Miguel in favor of Credit Suisse.  (Compl. Exs. A-F, Docket No. 1.)

Important to these motions is the term "Lenders" as defined in the Credit Agreement. (Compl. Ex. B.)  The three signatories to the Credit Agreement are identified individually as "a Lender" and collectively as "Lenders." (Compl. Ex. B at 42.)  The three identified lenders have different roles as Lenders.  For instance, Credit Suisse, Cayman Islands Branch ("Credit Suisse, a Swiss Bank," the Plaintiff in this case) is identified as "administrative agent for the Lenders" and "collateral agent," while Credit Suisse Securities (USA) LLC is identified as "lead arranger for the Lenders," "paying agent," "fronting bank," and "sole bookrunner," and  SG Americas Securities, LLC is identified as "co-arranger and syndication agent . . . for the Lenders." (Compl. Ex. B at 42.)  The Credit Agreement further defines the term Lender or Lenders as "the Persons identified as 'Lenders' and listed on the signature pages of this Agreement, together with their successors and permitted assigns pursuant to Section 9.1; provided that the term 'Lenders', when used in the context of a particular Loan Commitment shall mean the Lenders having that Loan Commitment."  (Credit Agreement § 1, Compl. Ex. B at 56.)  Each of the three identified Lenders signed in their respective capacities on pages 122-125 of the Credit Agreement.  (Credit Agreement, Compl. Ex. B at 164-166.)

There are no other signatories to the Credit Agreement other than the three entities previously mentioned and the Borrower, Tamarack Resort LLC.  However, the Lenders each had the right to assign all or a portion of its rights and obligations under the Credit Agreement to an "Eligible Assignee."  (Credit Agreement § 9.1, Compl. Ex. B at 150.)  The Administrative Agent is required under the terms of the Credit Agreement to maintain a copy of any assignment

agreement and a Register for recording the names and addresses of the Lenders with the

principal amounts of the Loans owing to each Lender pursuant to the terms of the Credit

Agreement.  (Credit Agreement § 9.1(C), Compl. Ex. B, at 151.)[2]  Tamarack Resort LLC had

access to the Register at all times.  (*Id.* Ex. B at 152.)

    As the Administrative Agent, Credit Suisse had the authority under the Credit Agreement

and other Loan Documents to act on the other Lenders' behalf.  (Credit Agreement § 8.1(A),

Compl. Ex. B at 146.)  Presumably according to that authority, the two mortgages entered into

with Borrower Tamarack Resort LLC and its subsidiaries were both executed by Credit Suisse

and not by the other two Lenders identified in the Credit Agreement.  (Mortgages, Compl. Exs.

C, D.)  Credit Suisse executed the mortgages with Tamarack Resort LLC and the subsidiary

entities in its capacity as "Collateral Agent for the Lenders."  (Mortgages, Compl. Ex. C at 782,

Ex. D at 822.)   Both mortgages specify that they are enforceable under Idaho state law and that

foreclosure proceedings would proceed according to Idaho state law.  (Mortgages § 6.1, Compl.

Ex. C at 773, Ex. D at 812.)

    As part of the loan package, Miguel and Boespflug signed a Non-Recourse Guaranty.[3]

(Compl. Ex. F at 842.)  The only other signatory, as in the mortgages, was Credit Suisse in its

---

    [2]  At the hearing, both parties represented that the Register contains a list of assignees, updated
monthly, and that interests in the loan to Tamarack Resort LLC are trading on the open market.  Credit
Suisse agreed to provide the Court with a copy of the Register for the Court to review for conflict and
recusal purposes.  *See* 28 U.S.C. § 455(b)(4) (requiring recusal if the judge, the judge's spouse, or her
minor child residing in her household has a financial interest in the subject matter in the controversy that
could be substantially affected by the outcome of the proceeding).

    [3]  The difference between a "non-recourse" debt as opposed to a "recourse" debt  means that a
creditor may only look to repayment of the loan from the collateral that secured the loan, and may not
seek repayment of the loan from the borrower's personal assets.  BLACK'S LAW DICTIONARY 1302 (8th
ed. 2004).  In the context of a non-recourse guaranty, the guarantor's personal assets may not be used to
satisfy the debt.  Credit Suisse acknowledged during oral argument that it could not seek repayment of the
loan from either Boespflug's or Miguel's personal assets.

REPORT AND RECOMMENDATION - 4

capacity as "administrative agent and collateral agent for Lenders."  (*Id.*)  Credit Suisse was

identified as "Agent" throughout the Guaranty, and all other terms in the Guaranty were defined

with reference to the Credit Agreement.  (*Id.*)

Among other things, Miguel and Boespflug agreed to the following three provisions:

> **(i)** guaranty to [Credit Suisse] payment for any actual loss, costs
> liability, damages or expenses (including reasonable attorneys'
> fees and disbursements), suffered or incurred by [Credit Suisse] or
> any lender arising from
> * * *
> (b) any misappropriation or misapplication of funds . . . committed
> by or on behalf of the  Borrower or its subsidiaries in
> contravention of the Loan Documents;
> ***
> (d) any transfer in violation of Sections 5.18, 5.19 or 6.8 of the Credit Agreement;
> (e) violation of any of the [Single Purpose Entity] requirements set
> forth in Section 5.16 of the Credit Agreement other than
> subsections (e) and (h);
> (f) additional indebtedness obtained by Borrower or its
> Subsidiaries (whether secured or unsecured) except as permitted
> by Section 6.1 of the Credit Agreement;
> ***
> (I) if any Lien (other than a Lien permitted under Section 6.2 of the
> Credit Agreement) is voluntarily placed on the Collateral or any
> portion thereof in contravention of the Loan Documents and such
> Lien is not discharged and removed within ten (10) days after
> notice;
> ***
> (j)  the cost of enforcement of any of Agent's rights or remedies
> under any of the other Loan Documents to the extent such
> enforcement is a result of any indemnified actions set forth in
> Sections (1)(i)(a)-(I) and (k) or Section 1(ii) hereof; or
> (k) the failure to pay Taxes assessed against the Real Property
> Collateral to the extent there were sufficient funds to pay the
> same[.]
>
> **(ii)** guaranty to [Credit Suisse] payment of all Obligations in the
> event of:
> (a) Borrower filing a voluntary petition for bankruptcy,
> reorganization or arrangement or similar creditor's proceedings
> pursuant to federal bankruptcy law or any similar federal or state

REPORT AND RECOMMENDATION - 5

> law, or the corresponding laws of any other jurisdiction (a
> "Petition");
> ***
> and
>
> **(iii)** agrees to reimburse [Credit Suisse] for, and hold [Credit
> Suisse] harmless from and against, any and all losses, damages,
> claims, costs or expenses (including reasonable attorneys' fees),
> deficiencies and liabilities incurred, suffered or sustained by
> [Credit Suisse] . . . as a result of, arising out of or in connection
> with the enforcement of this Guaranty . . . .

(bold added) (Guaranty § 1, Compl. Ex. F at 842-844.)  Credit Suisse aptly described its

Guaranty as a "bad boy" guaranty, since Miguel and Boespflug were guarantying that the

Borrower would not commit the acts described in Section 1(i) listed above.

Suit to enforce the Guaranty could have been brought in any state or federal court in the

State of New York with jurisdiction, and the parties agreed the terms of the Guaranty would be

construed and enforced in accordance with New York state law.  (Guaranty §§ 17, 20, Compl.

Ex. F at 848, 850.)  Credit Suisse was not required, however, to bring its suit in New York.

## B.      The Complaint

Credit Suisse filed its complaint against Boespflug and Miguel, noting that it was doing

so "as Agent for Lenders."  (Compl. ¶ 6, Docket No. 1.)  The Complaint alleges that Boespflug

and Miguel agreed to certain conditions in Section 1 of the Guaranty.  Credit Suisse limited its

allegations to actions taken contrary to Section 1(i)(b),(d),(e),(f),(i),(j),and (k) of the Guaranty,

claiming that Boespflug and Miguel failed to deposit funds into a bank account in which Credit

Suisse has a security agreement; caused Tamarack Resort LLC's subsidiaries to merge with and

into it; permitted mechanics' liens totaling over $13 million to be filed against the project;

allowed the grant of a $780,000 mortgage to be recorded against the project; and failed to pay

property taxes.  (Compl. ¶¶ 4, 21-27, 31, Docket No. 1.)

Credit Suisse seeks damages for Boespflug's and Miguel's alleged violation of the Guaranty for the acts described.  Credit Suisse does not, however, seek damages equivalent to repayment of the underlying debt obligation of $250,000,000, which is set forth in Section 1(ii) of the Guaranty, but rather limits its request for monetary relief to any damages resulting from a breach of the conditions in Section 1(i) of the Guaranty.[4]  (Compl. ¶ 37, Docket No. 1.)

Credit Suisse acknowledged that it filed a complaint in Idaho state court seeking foreclosure of the mortgages securing the debt, and for the appointment of a receiver.  (Compl. ¶ 3, Docket No. 1.)  The Amended Complaint filed in the foreclosure action seeks foreclosure against the mortgagors, Tamarack Resort LLC and its subsidiaries, and a determination of any deficiency.  (Aff. of Angstman ¶ 6, Ex. B, Docket No. 23.)  The state court action does not name either Boespflug or Miguel as defendants, nor does it seek a deficiency judgment against them as guarantors.  (Aff. of Angstman ¶ 7, Docket No. 23.)  Rather, Credit Suisse seeks determination of any deficiency against the mortgagors, stating that "if the proceeds of said sale shall be insufficient to pay the . . . sums to Plaintiff, and it shall appear that a deficiency exists, that judgment then be entered for such deficiency against Borrower and that Plaintiff have execution thereof."  (Aff. of Angstman Ex. B, Am. Compl. ¶¶ 131(e), 132(d), Docket No. 23.)  The Amended Complaint further avers that "[n]o other action at law or in equity has been commenced or is pending to collect on the Mortgage or any portion thereof, or to foreclose the Borrower Mortgage."  (Aff. of Angstman Ex. B, Am. Compl. ¶ 109, Docket No. 23.)  The state court has not yet issued a foreclosure judgment or ordered a sale of the collateral, nor has it

---

[4] Credit Suisse, through counsel, confirmed at the hearing that it was suing for damages under Section 1(i), and not any other section of the Guaranty.

REPORT AND RECOMMENDATION - 7

determined a deficiency amount.  (Aff. of Angstman ¶¶ 8-9, Docket No. 23.)

**C.     The Arguments of the Parties**

Defendants filed two motions to dismiss.  In the first, Defendants moved to dismiss the

complaint or, in the alternative, request a more definite statement.  (Docket No. 15.)  Defendants

argue that Plaintiff's Complaint should be dismissed because they claim Credit Suisse is acting

on behalf of unnamed "Lenders" who provided money to fund the loan, and thus diversity of

citizenship, upon which jurisdiction is based, is destroyed because these unidentified entities or

individuals are not named as plaintiffs.  Alternatively, Defendants argue that these unnamed

Lenders should be made parties, and they seek dismissal on the ground that indispensable parties

have not been joined under Fed. R. Civ. P. 19.  If the complaint is not dismissed, Boespflug and

Miguel want Credit Suisse to identify the unnamed Lenders under Fed. R. Civ. P. 12(e), and

request a more definite statement of the claims these Lenders may have against them.

In their second motion, Defendants again moved to dismiss under Fed. R. Civ. P.

12(b)(1) and Fed. R. Civ. P. 56(c).  Presuming diversity jurisdiction exists, Boespflug and

Miguel argue that, under New York state law, Credit Suisse cannot simultaneously seek

foreclosure of the mortgages and collection of the debt on the personal guaranty.  Defendants

allege that, under New York's mortgage deficiency statute, Credit Suisse is required to take

several steps before seeking collection of a debt secured by real property against a loan

guarantor, and they claim Credit Suisse did not satisfy the statutory prerequisites prior to

bringing this action, leaving this Court without subject matter jurisdiction.  Defendants explained

at the hearing that, even though Credit Suisse seeks damages for alleged bad acts prohibited by

the Guaranty, Defendants claim these damages were secured by the mortgage collateral and thus

REPORT AND RECOMMENDATION - 8

may only be satisfied by the collateral.

Credit Suisse counters Defendants' arguments by explaining that the Guaranty was executed by it, Boespflug, and Miguel, and not by any other Lender.  Accordingly, Credit Suisse asserts that it is enforcing its own rights under the Guaranty, not the rights of unnamed or unidentified third parties.  Even if it was asserting the rights of other Lenders, Credit Suisse contends that it, too, is a Lender under the Credit Agreement, and therefore is enforcing its own rights.  As for the second motion, Credit Suisse asserts it is not seeking to recover the $250,000,000 loan balance or a deficiency in this action, but instead is suing for damages resulting from breach of other conditions of the Guaranty.  Credit Suisse explains that the damages it seeks are distinct from any amounts it may recover in satisfaction of the debt in the mortgage foreclosure action.

**III.**
**Discussion**

A.    **Legal Standards Applicable to a Motion to Dismiss or Motion for Summary Judgment**

1.    **Rule 12(b)(1).**

Defendants filed their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, claiming that the existence of "unnamed lenders" destroys diversity jurisdiction under 28 U.S.C. § 1332 and, in their second motion, on the grounds that Credit Suisse did not comply with New York law before filing its complaint.  There are two types of Rule 12(b)(1) motions: facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to

invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  Defendants contend that their argument concerning lack of diversity jurisdiction is a "facial" attack.  (Def.s' Mem. 4, Docket No. 16.)

However, Defendants' second motion to dismiss (Docket No. 22) appears to be a "factual" attack, looking to matters outside of the pleadings.  To resolve a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir.2003)).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage*, 343 F.3d at 1039 n.2.  The district court does not abuse its discretion by looking to materials outside the pleadings in deciding the issue, even if it becomes necessary to resolve factual disputes.  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## 2.       Rule 56(c).

Defendants have also included a claim for summary judgment in their second motion to dismiss.  (Docket No. 22.)  Motions for summary judgment are governed by Fed. R. Civ. P. 56. Rule 56 provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981).

## B.   Defendants' Motion to Dismiss, or in the Alternative, Motion for More Definite Statement (Docket No. 15)

### 1.   Unidentified Lenders and Diversity Jurisdiction.

Defendants argue that Credit Suisse is merely suing as an "agent" of unnamed enders, and that all Lenders are integral parties who should be named in the lawsuit. Therefore, according to Defendants, these Lenders must be identified, and their citizenship potentially destroys diversity jurisdiction under 28 U.S.C. § 1332(a). Credit Suisse counters by arguing that, under the terms of the Guaranty, it is suing in its own name and pursuing its own rights as the entity that signed the Guaranty. Credit Suisse explains that it mentioned the other lenders in its complaint to provide context to the dispute. Credit Suisse also noted that it was a Lender under the terms of the Credit Agreement.

To establish diversity jurisdiction, the matter in controversy must exceed the value of

REPORT AND RECOMMENDATION - 11

$75,000, exclusive of interest and costs, and be between citizens of different states.  28 U.S.C.

§ 1332(a).  There must be complete diversity, meaning that no plaintiff and no defendant may be

citizens of the same state.  *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004).  For

purposes of establishing diversity jurisdiction, the "'citizens' upon whose diversity a plaintiff

grounds jurisdiction must be real and substantial parties to the controversy."  *Navarro Sav. Ass'n*

*v. Lee*, 446 U.S. 458, 460 (1980), *cited in Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d

857, 861 (2nd Cir. 1995).[5]

In essence, Miguel and Boespflug allege that Credit Suisse, as an "agent," is acting in the

context of an assignee of the claims of others.  *See* 28 U.S.C. § 1359.[6]  When considering

whether an assignment is proper or collusive for purposes of diversity jurisdiction, factors that a

court may examine are as follows:

> were there good business reasons for the assignment; did the
> assignee have a prior interest in the item or was the assignment
> timed to coincide with commencement of litigation; was any
> consideration given by the assignee; was the assignment partial or
> complete; and was there an admission that the motive was to create
> jurisdiction.

*Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 595 (9th Cir. 1996).  As a

general rule of thumb, if an assignment is entire, rather than partial, "there is a very good chance

that it will be found to be proper," although exceptions to this general rule exist.  *Attorneys*

*Trust*, 93 F.3d at 596.  If an assignment is partial, however, courts are "very likely to find that

_____

[5]  The concept of being a "real and substantial party" for purposes of diversity jurisdiction is not the same standard as a real party in interest under Fed. R. Civ. P. 17(a).  *Airlines Reporting Corp.*, 58 F.3d at 862 n.4.

[6]  Section 1359 states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

there is an improper or collusive transfer because the prior owner still has an interest," with a few minor exceptions. *Id.* (citing *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 859 (2nd Cir. 1995)). In these types of "partial" assignments, the premise is that the assignee was not truly a real party in interest, but a strawman or conduit with no real interest in the outcome of the case. *Id.* at 598.

Defendants rely upon the facts and holding in *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857 (2nd Cir. 1995), for their argument that Credit Suisse is acting as a "mere conduit for others," in this case the Lenders. In *Airlines Reporting Corp.* ("*ARC*"), the plaintiff had entered into ticket distribution contracts with travel agents on behalf of airline carriers, with authority under those contracts to institute proceedings against any travel agent to collect funds owed to the carriers. ARC discovered that one of the travel agents with whom it had a contract owed money to twenty-nine different air carriers for tickets it had processed through ARC. ARC brought suit in federal court on behalf of the various airline carriers.

The district court found the assignment "suspicious" and dismissed the action, because of the timing of the assignments, the fact that ARC would collect no money from prosecuting the litigation, and the fact that ARC paid no consideration for the assignments. *Airlines Reporting Corp.*, 58 F.3d at 860. The court of appeals agreed, explaining that ARC was "a mere conduit for the remedy owing to others, advancing no specific interest of its own," and it affirmed the district court's dismissal of the case because there was no diversity once the citizenship and claim amounts of the twenty-nine airline carriers were considered. *Airlines Reporting Corp.*, 58 F.3d at 862. The court also considered the assignment to be "presumptively collusive" under 28 U.S.C. § 1359. *Id.* at 863. ARC's explanation that it became the assignee for business reasons

did not overcome the presumption of collusion, considering the timing of the assignments just after defendants challenged jurisdiction and the lack of consideration.  *Id.* at 864.

*Airlines Reporting Corp.* is distinguishable from the facts of this case because Credit Suisse is not a mere "conduit" for unidentified lenders.  The facts before the Court are more akin to those in *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2nd Cir. 2003), where the Second Circuit Court of Appeals found that the plaintiff, who owned an 11.53% interest in outstanding stock warrants, suffered a pecuniary loss and would be entitled to a portion of the damages award.  The court in *Oscar* noted that the facts were different than those in *ARC*, because the plaintiff was seeking to protect corporate interests of its own, suffered damages and a pecuniary loss, and had a claim to a portion of the potential recovery, unlike ARC.  *Oscar Gruss & Son, Inc.*, 337 F.3d at 194.

In this case, according to the express written terms of the Guaranty, Boespflug and Miguel guaranteed payment to Credit Suisse, not to any other Lender, for damages that Credit Suisse or a Lender might incur upon the occurrence of any event outlined in Section 1(i) of the Guaranty.[7]  Credit Suisse is the only entity that signed the Guaranty, and the only entity entitled to payment of damages under the express terms of the Guaranty.  It is clear from the face of the Complaint that Credit Suisse is suing on its own behalf for damages it allegedly suffered, since in numerous places within the Complaint Credit Suisse indicates that liability to it is triggered and the bank seeks damages it incurred (Compl. ¶ 5), that it has suffered damages and expenses (Compl. ¶ 35), and that Defendants are liable to Credit Suisse (Compl. ¶ 37).

---

[7]  Miguel and Boespflug agreed to "guaranty to Agent," defined in the Guaranty as Credit Suisse, "payment for any actual loss, costs, liability, damage or expense . . . suffered or incurred by Agent or any lender."

REPORT AND RECOMMENDATION - 14

Furthermore, in reviewing the documents attached to the pleadings, under the terms of Credit Agreement, Credit Suisse is included in the group of Lenders.[8]  Thus, to the extent that Credit Suisse can lay claim to damages under the Guaranty as a Lender, it is suing on its own behalf as a Lender.  Finally, none of the Lenders has any right to enforce the loan documents. Section 8.7 of the Credit Agreement operates as an assignment of each Lender's right to enforce the Loan Documents and grants to Credit Suisse as Collateral Agent the sole right to exercise any and all rights and remedies.  (Credit Agreement § 8.7, Compl. Ex. B at 149. Docket No. 1.)[9] Nor do the Lenders have any right to enforce the Guaranty, since none of the Lenders were parties to that Agreement.  Under the terms of the Credit Agreement, Credit Suisse was clearly intended to be the "master" of any litigation, and the Lenders, as well as their citizenship, are irrelevant to subject matter jurisdiction.  *Oscar Gruss & Son, Inc.*, 337 F.3d at 195.

The Court therefore finds that Credit Suisse is not a conduit or strawman that would pass along any damages it was awarded to others, directly contrary to the facts in *Airlines Reporting Corp.*  Rather, Credit Suisse is protecting its own interests under the terms of the Guaranty, both

---

[8]  Section 8.2 of the Credit Agreement provides that the persons:

> serving as the Agents . . . shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Persons serving as the Agents hereunder in their individual capacity.

(Credit Agreement § 8.2, Compl. Ex. B at 147.)

[9]  Section 8.7 of the Credit Agreement provides, in pertinent part, that "no Lender shall have any right individually to realize upon any of the Collateral under any Collateral Document, it being understood and agreed that all rights and remedies under the Collateral documents may be exercised solely by the collateral Agent for the benefit of the Secured Parties and the other beneficiaries named therein in accordance with the terms thereof."

REPORT AND RECOMMENDATION - 15

as the party to the Guaranty entitled to payment of any damages, and as a Lender.  Credit Suisse

explained in the Complaint that it seeks to protect its own interests and recover damages it

allegedly suffered.  Finally, the Complaint asserts that Credit Suisse[10] is a bank organized under

the laws of Switzerland and does business in New York, while Boespflug and Miguel are

citizens of the state of Idaho.  Therefore, as between Credit Suisse and Defendants, the necessary

diversity of citizenship exists.

> ### 2.      Failure to join indispensable parties under F.R.C.P. 19.

Fed. R. Civ. P. 12(b)(7) permits dismissal of a complaint for failure to join a party under

Rule 19.  In turn, Fed. R. Civ. P. 19 provides, in pertinent part, that:

> A person who is subject to service of process and whose joinder
> will not deprive the court of subject-matter jurisdiction must be
> joined as a party if . . . that person claims an interest relating to the
> subject of the action and is so situated that disposing of the action
> in the person's absence may . . . leave an existing party subject to a
> substantial risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B)(ii).  If a person who is required to be joined cannot be joined, "the

court must determine whether, in equity and good conscience, the action should proceed among

the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  Boespflug and Miguel argue

that the absence of the unnamed Lenders will force them to defend multiple claims, because the

other Lenders have the right to enforce the Guaranty on their own behalf.

The facts and circumstances of each case influence the Court's decision to join a party.

*Bakia v. Los Angeles County*, 687 F.2d 299, 301 (9th Cir. 1982).  The policies underlying Rule

---

[10]  Also, to the extent there is any ambiguity over whether "Credit Suisse, a Swiss Bank" or
"Credit Suisse, Cayman Islands Branch" is the proper Plaintiff, paragraph six of the Complaint resolves
that issue.  As stated therein, Credit Suisse is a bank organized under the laws of Switzerland, and it
operates the Cayman Islands Branch.  (Compl. ¶ 6, Docket No. 1.)

19 include a plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing parties with complete and effective relief in a single action, protecting the absentee, and fairness. *Bakia*, 687 F.2d at 301. Joinder under Rule 19(a)(1)(B) is also contingent upon the absent party "claiming an interest" relating to the subject matter of the action. *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) (citing *Northrop Corp. v McDonnell Douglas Corp*., 705 F.2d 1030, 1043 (9th Cir. 1983)). Consequently, if a party is aware of an action and chooses not to claim an interest, the court does not commit error by determining joinder is not necessary. *Altmann*, 317 F.3d at 971 (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir.1999)). If the Court concludes that a party is not necessary under Rule 19(a), it is not required to consider the factors under Rule 19(b). *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004).

Presumably, the Lenders who are parties to the Credit Agreement are aware of the litigation both in state court and this Court, considering the magnitude of the loan. The Court has not been informed of any Lender, besides Credit Suisse, who claims an interest in this action. And, in any event, the other Lenders who signed the Credit Agreement expressly authorized Credit Suisse to act in their interests. (Credit Agreement, *supra* note 9, at 16.) Accordingly, Defendants have not made any showing that the prerequisite to invoking Rule 19(a)(1)(B) has been satisfied.

Moreover, under the express terms of the Guaranty, Defendants' fears of multiple obligations appear unfounded. Credit Suisse is acting solely on its own behalf to enforce the terms of the Guaranty, under which Miguel and Boespflug guaranteed payment exclusively to Credit Suisse for any damages arising from the breach of its conditions. Thus, there is no risk

that any other Lender can assert a claim for damages against Boespflug or Miguel under the Guaranty, because Credit Suisse is the only entity under the terms of the Guaranty who can assert such a claim or is entitled to payment.[11]

Because the Court has determined that joinder of any other Lender is unnecessary, it need not consider the factors under Rule 19(b), and dismissal is not required.[12]

### 3.   Alternative Motion for More Definite Statement.

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e).  The party must point out the defects complained of and the details desired. Fed. R. Civ. P. 12(e).  Rule 12(e) is designed to ensure the parties know who is being sued and for what. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  Rule 12(e) should be read in conjunction with Fed. R. Civ. P. 8(a), which requires a short and plain statement of the claim showing that the party is entitled to relief.

Defendants seek a statement as to whether they are answering the claims of Credit Suisse, asserted on its own behalf, and whether the other Lenders contend that either Boespflug or Miguel made any promise or caused any injury to the other Lenders by virtue of the Guaranty. (Def.s' Mem. 10, Docket No. 16.)  Enmeshed with Defendants' argument is a claim that Credit

---

[11] Credit Suisse explained that a Lender may have a claim against it, but not against Boespflug or Miguel.

[12] Although decided in the context of the state mortgage foreclosure actions under Idaho R. Civ. P. 17(a), the state court held that Credit Suisse was the real party in interest to bring the mortgage foreclosure actions, not the Lenders, and that there was no real threat or possibility that Tamarack Resort LLC could be subjected to subsequent suits on the same action or that any judgment would not be binding upon the Lenders. *Credit Suisse v. Tamarack Resort LLC*, No. CV 08-114C, Mem. Dec. at 5-8, (4th Dist. Ct. Idaho July 23, 2008), attached as Ex. A, Docket No. 37.  The Court took judicial notice of the state court's decision.  (Order, Docket No. 39.)

Suisse lacks standing, because it has alleged no injury to itself.  (Def.s' Mem. 10, Docket No. 16.)  Credit Suisse argues that, not only was Defendants' argument waived in the Guaranty, but the Complaint asserts claims belonging only to Credit Suisse.

The Court agrees that the Complaint sets forth Credit Suisse's claims, and not the claims of any other Lender.  For example, Credit Suisse complains that, under the terms of the Guaranty, Defendants agreed "unconditionally to guaranty to Plaintiff payment for any actual loss . . . suffered or incurred by Plaintiff" arising from breach of the conditions of the Guaranty. (Compl. ¶¶ 2, 19, 20, Docket No. 1.)  The Complaint then details the actions Credit Suisse contends constitute breach of the Loan Documents by Tamarack Resort LLC (Compl. ¶¶ 3-4) and states that Defendants' "liability to Plaintiff" is therefore triggered under the Guaranty. (Compl. ¶ 5.)  Credit Suisse mentions the Lenders in the context of describing the other documents comprising this complicated transaction.  (Compl. ¶¶ 15-18.)  But in its claim for relief, Credit Suisse states it is asserting its own claims under the express terms of the Guaranty, noting that the Guaranty was executed in its favor, Defendants guaranteed payment to Credit Suisse for any damages "suffered or incurred by Credit Suisse," and therefore Defendants are in "breach of the Guaranty" and "liable to Credit Suisse."  (Compl. ¶¶ 29-37.)

Based upon the allegations in the Complaint, it is clear that Credit Suisse is asserting its own claims for damages it allegedly suffered as a result of Defendants' alleged breach of the Guaranty.  *See Davis v. Yageo Corp*., 481 F.3d 661, 673 (9th Cir. 2007) (for a plaintiff to have standing, it must show that it "suffered an injury in fact, there was a causal connection between the injury and the conduct complained of, and the injury is likely to be redressed by a favorable decision.").  Therefore, Credit Suisse has standing because it alleges it was injured as a result of

Defendants' alleged conduct, and the Court finds that a more definite statement is unnecessary.[13]

Upon concluding that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) and that the Complaint should not be dismissed under Fed. R. Civ. P. 12(b)(1) or (7), the Court now turns to Defendants' second Motion to Dismiss or Motion for Summary Judgment.

**C.     Defendants' Motion to Dismiss/Motion for Summary Judgment (Docket No. 22)**

Initially, the Court must address whether Idaho or New York law applies to Defendants' argument that New York law governs with respect to a deficiency claim.  (*See* Def.s' Mem. 5, Docket No. 24.)  The two mortgages executed by the parties in the loan transaction were expressly enforceable under Idaho state law, and therefore Idaho law would apply to the foreclosure proceedings, while the Guaranty states that New York state law applies to its provisions.  The Court need not address the question of which state's law governs because, for purposes of this motion, Credit Suisse discussed the application of New York state law and reserved its right to argue at the appropriate time that Idaho state law would apply to any claim for a deficiency judgment.  (Mem. in Opp. 3 n.2, Docket No. 26.)

Defendants contend that Credit Suisse cannot file an action based upon the "bad boy" clause in the Guaranty unless and until there is a deficiency in the foreclosure action. Defendants argue that under New York law, specifically N.Y. Real Prop. Acts. Law §§ 81-1301 and 1371, Credit Suisse had to take several steps before seeking or obtaining a deficiency judgment against a guarantor, and thus this lawsuit must be dismissed.  Boespflug and Miguel also argue that Credit Suisse may choose to seek foreclosure or recovery of the mortgage debt

---

[13]  Because the Court concludes a more definite statement is unnecessary and that Credit Suisse has standing, it does not reach Credit Suisse's alternative argument that Defendants waived their right to assert this defense.

against them as guarantors, but may not do both, which they argue it seeks to do in this action. Defendants are concerned with the possibility of a double recovery by Credit Suisse in the event the resort property sells for more than Credit Suisse is owed.

Credit Suisse asserts that, even if the statutory sections Defendants cite are applicable to this action, they do not apply because Credit Suisse is not seeking a deficiency against Defendants. Credit Suisse explained at the hearing that it has no grounds to seek a deficiency against Defendants, and that it seeks damages, not payment of the debt secured by the mortgage. Credit Suisse explained that it is seeking damages under its right to maintain an independent action for those damages under the terms of Section 1(i) of the Guaranty. Credit Suisse also acknowledged at the hearing that its Guaranty is "non-recourse," meaning that they may not look to Boespflug's and Miguel's personal assets for repayment of the debt. *See supra*, note 3 at 4.

### 1.    New York Law Applicable to Interpretation of the Guaranty.

A federal court exercising diversity jurisdiction must apply substantive state law. *American Triticale, Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). According to the terms of the Guaranty, New York state law applies to interpretation of its terms. New York law specifies that a contract of guaranty must be in writing, and that it is interpreted in the same manner as any other contract. *Eastern Capital Corp. v. Freeman*, 168 N.Y.S.2d 834, 837 (N.Y. Sup. Ct. 1957). The nature of the obligation depends upon the parties' intent, and if the parties' intent may be determined "from the four corners of the instrument, interpretation of the contract is a question of law." *Brewster Transit Mix Corp. v. McLean*, 565 N.Y.S.2d 316, 317 (N.Y. App. Div. 1991).

2.      **Applicability of Statutory Provisions Cited by Defendants.**

N.Y. Real Prop. Acts. Law § 81-1301 (McKinney 2008) applies to actions to foreclose a mortgage, and specifies that if a final judgment for a plaintiff has been rendered in an action to recover any part of a mortgage debt, an action may not be maintained to foreclose the mortgage unless the money judgment has been returned wholly or partly unsatisfied.  N.Y. Real Prop. Acts. Law § 81-1301(1).  If an action is pending to foreclose a mortgage, no other action may be commenced or maintained to recover "any part of the mortgage debt, without leave of the court" in which the foreclosure action was brought.  N.Y. Real Prop. Acts. Law § 81-1301(3).  In an action to foreclose a mortgage, "any person who is liable to the plaintiff for payment of the debt secured by the mortgage may be made a defendant in the action."  N.Y. Real Prop. Acts. Law § 81-1313.

If a person liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the foreclosure action, and the debt remains unsatisfied after a sale of the mortgaged property and the application of the sale proceeds, the court may require the defendant to pay the remaining residual amount.  N.Y. Real Prop. Acts. Law § 81-1371(1).  The party to whom the deficiency amount is owed may make a motion for leave to enter a deficiency judgment upon notice to the party against whom the judgment is sought.  N.Y. Real Prop. Acts. Law § 81-1371(2).  Thus, a motion for a deficiency judgment is part of, and not separate from, the foreclosure action.  *Steuben Trust Co. v. Buono*, 677 N.Y.S.2d 852, 852 (N.Y. App. Div. 1998).

If no motion for a deficiency judgment is made, the proceeds of the sale regardless of amount "shall be deemed to be in full satisfaction of the mortgage debt and no right to recover

any deficiency in any action or proceeding shall exist."  N.Y. Real Prop. Acts. Law § 81-1371(3).  *Sanders v. Palmer*, 68 N.Y.2d 180, 181 (N.Y. 1986), applied section 1371(3) to explain that if a single debt is secured by a mortgage of property owned by a corporate debtor and by a mortgage of an individual guarantor's separate property, the failure to obtain a deficiency judgment after the sale of the corporate debtor's property in a foreclosure action in which the guarantor is a party defendant bars further action to foreclose the guarantor's mortgage or on the guaranty.  *Sanders v. Palmer*, 68 N.Y.2d at 181.  In other words, the failure to seek a deficiency against a debtor in a foreclosure action bars all further actions against the guarantor to collect the debt secured by the mortgage.

Against this backdrop, the Court concludes that these statutes do not apply to this lawsuit as a matter of law.  The Court acknowledges that an action for foreclosure of the mortgage is pending against Tamarack Resort LLC as well as other defendants in Idaho state court, and that the state court foreclosure complaint does not name Boespflug or Miguel as defendants.  However, this lawsuit seeks damages for breach of the Guaranty.  A guaranty is a separate contract, and may impose greater burdens upon the guarantor than simply repayment of the debt secured by the mortgage.  *American Trading Co., Inc. v. Fish*, 42 N.Y.2d 20, 26 (N.Y. 1977) (noting that a guaranty "may impose lesser or even greater collateral responsibility on the guarantor.").

In this case, Credit Suisse does not seek repayment of the debt owed by Tamarack Resort LLC.  The Guaranty has two provisions, Section 1(i) and Section 1(ii).  Section 1(ii) is the repayment provision, in which Miguel and Boespflug guaranteed payment to Credit Suisse of all "Obligations," defined in the Credit Agreement as "all obligations, liabilities and indebtedness of

every nature of each Loan Party," with the Loan Party further defined as Tamarack Resort LLC
and its subsidiary entities.  (Credit Agreement §1.1, Compl. Ex. B at 59, 57, Docket No. 1.)  In
addition to the loan repayment provision, the Guaranty imposed additional burdens upon
Defendants in Section 1(i), providing Credit Suisse authority to seek damages incurred as a
result of any one of eleven occurrences of default.

Credit Suisse's Complaint seeks damages pursuant to Section 1(i) of the Guaranty, not
Section 1(ii).  According to Section 1(i), Credit Suisse may seek damages for the Borrower's
alleged misappropriation of funds, unauthorized transfers, violation of the Single Purpose Entity
requirements of the Credit Agreement, incurring of additional debt not permitted by the Credit
Agreement, allowance of liens to be placed on the resort property, failure to pay taxes, and for
the cost of enforcement of Credit Suisse's rights.  While these damages are related to the
underlying loan obligation, the damages, if any, constitute sums in addition to and separate from
the debt, and do not comprise any part of the debt or any deficiency that may be determined after
a sale of the collateral.  Consequently, Credit Suisse is not seeking to recover any part of the
mortgage debt in this action, and the statutes Defendants rely upon are inapplicable to this case.

In addition, although N.Y. Real Prop. Acts. Law § 81-1371(3) "prohibits a mortgage
lender seeking repayment of a loan from simultaneously prosecuting an action at law to recover
upon a promissory note and an action in equity to foreclose the mortgage, the prohibition does
not apply where . . . the property securing the loan is located outside of New York State."  *Wells
Fargo Bank Minnesota, N.A. v. Cohn*, 771 N.Y.S.2d 649, 649 (N.Y. App. Div. 2004).
Accordingly, in *Wells Fargo*, the court did not dismiss the action before it seeking to enforce a
promissory note guaranteeing payment of a loan secured by property located outside of New

REPORT AND RECOMMENDATION - 24

York. *Id.* Even if the Court concluded that New York's deficiency laws applied, it is clear that under New York law, enforcement of the Guaranty in this case would be allowed because the real property securing the mortgages is located in Idaho.[14]

The Court is not unsympathetic to Defendants' concern that this action may provide Credit Suisse with a double recovery. (*See* Def.'s Mem. in Support of Mot. to Stay, Docket No. 29, and Order, Docket No. 33 (providing an extended time frame for pre-trial deadlines in light of the state court foreclosure action.)) The obligations Boespflug and Miguel guaranteed are obligations Tamarack Resort LLC promised to fulfill as part of the Credit Agreement and Mortgage. Many of the lien claimants are parties to the state court mortgage foreclosure action. Presumably a sale of the collateral netting sufficient proceeds to pay Credit Suisse, the lien claimants, and generate surplus proceeds, would satisfy some or all of the damages Credit Suisse seeks in this action with respect to its damage claims concerning the unauthorized liens, as well as other damages it may claim. But, unless and until that event occurs, there is no New York state law provision prohibiting an independent action by Credit Suisse for damages claimed under the Guaranty and a simultaneous mortgage foreclosure action to seize the collateral in satisfaction of the debt owed to it.

Accordingly, in the absence of any state law provision that would divest this Court of jurisdiction, the Court will recommend that Defendants' second motion to dismiss be denied. To the extent that Defendants' motion to dismiss could be construed as a motion for summary judgment, that motion is also denied because New York state law does not preclude this lawsuit.

---

[14] The Court seriously doubts New York's deficiency statutes apply in this matter, but the issue is not before it and is not decided herein. *See* Idaho Code § 6-108 (providing procedure for collection of mortgage debt and collection of deficiency after sale).

REPORT AND RECOMMENDATION - 25

## <u>RECOMMENDATION</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY RECOMMENDED that**

    1)    Defendants' Motion to Dismiss or in the Alternative for a More Definite Statement (Docket No. 15) be **DENIED.**

    2)    Defendants' Motion to Dismiss/Motion for Summary Judgment (Docket No. 22) be **DENIED.**

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: February 13, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 26